SAMUEL D. WARD, Receiver, etc.

*v.*

JOHN V. FARWELL *et al.*

*Filed at Ottawa February 3, 1881—Rehearing denied March Term, 1881.*

1. CONSTITUTIONAL LAW—*change in terms of charter.* A charter to a private corporation, being a contract between the State and the corporators, when accepted, it follows that when the right to do so has not been reserved in the grant it is not within the power of the legislature, after the acceptance of such charter, to engraft upon it any new terms or provisions, without the concurrence and assent of the corporation.

2. SAME—*charter taken subject to implied duties and conditions.* But, in contracts created by the grant and acceptance of a charter, as in most other contracts, there are annexed to them, by implication of law, certain terms and conditions, which are as much a part of the contract as those which are expressly stated, and, upon principle, the corporators of every such company are held to impliedly agree to take the privileges and immunities conferred by the charter, subject to the right of the State to reclaim them for any manifest misuser of them.

3. So, every private corporation, in accepting its charter, impliedly undertakes and agrees, upon condition of forfeiture, that it will exercise the rights and privileges conferred upon it in furtherance of the objects and purposes of its creation, and not otherwise, and that it will so manage and conduct its affairs that it shall not become dangerous or hazardous to the safety or well-being of the State or community in and with which it transacts business.

4. SAME—*political trusts can not be bartered away.* The political agencies, commonly called branches of government, are the representatives of the people, in their sovereign capacity, and the powers conferred upon them, so far as they are essential to the attainment of the objects and purposes of government, are held by them in trust for the people, and it is not in their power to delegate them to others, or to contract or barter them away.

5. SAME—*legislature may make contracts binding on the State.* While the legislature has no right to diminish the powers of a succeeding one, yet it may, in the exercise of its legislative functions, enter into contracts by which the State will be bound to the same extent as individuals. But all such contracts must be regarded as subject to the right and duty of the legislature, in the exercise of its police power, to adopt such reasonable laws, rules and regulations as shall be necessary for the safety, good order and well-being of the people.

38—97 ILL.

6. SAME—*legislative control over private corporations.* With certain constitutional limitations, the rights of all persons, whether natural or artificial, are subject to such legislative control as the legislature may deem necessary for the general welfare, and in this respect there is no difference between the rights of natural and artificial persons. They both stand precisely on the same footing.

7. SAME—*constitutionality of act of 1874, providing for dissolution of insurance companies.* The legislature is authorized, in the proper exercise of the police power of the State, to adopt such necessary legislation and regulations as will effectually protect the community from losses and injury incident to a public business conducted by a corporation, under a charter from the State, when such business has become hazardous, to those who, in ignorance of its condition, do business with it. Therefore, the legislature had the constitutional right to pass the law of 1874, in regard to the dissolution of insurance companies, on judicial inquiry, when the auditor, upon examination, should be of opinion their condition is such as to render their further continuance in business hazardous to the insured therein.

8. SAME—*impairing obligation of contracts.* The legislature, subject to certain limitations, having the rightful authority, in the exercise of its police power, to pass laws for the control of corporations, without regard to the time of their creation, it follows that contracts between an insurance company and its policy-holders are entered into subject to this right of legislation, and, therefore, an act to wind up such company when its financial condition is such as to be hazardous to parties insuring with it, is not obnoxious to the objection that such ·legislation impairs the validity of the contract with policy-holders.

9. SAME—*depriving of property, etc., without due process of law.* The act of 1874, entitled "An act in regard to the dissolution of insurance companies," is not obnoxious to the constitutional objection, that it "deprives the stockholders of their property, liberty and franchises without due process of law." The act contemplates and provides for a full hearing, upon due notice to all parties interested. If this is not done it is not the fault of the act, but a mere error in the proceedings under it.

10. CORPORATION—*ground of forfeiture of franchise at common law.* At common law, a misuser by a corporation, of its franchises, is a cause of forfeiture, and the taking and accepting of premiums for insurance, by an insurance company, without any probability of its ever being able to pay its losses, is such an abuse of its franchises as affords good cause of forfeiture, independent of the statute, and, therefore, a statute enacting the same thing, is not an *ex post facto* law. It is but declaratory of the common law.

11. RIGHT OF TRIAL BY JURY—*in what cases it exists.* The constitutional provision, giving a right to trial by jury, was designed simply to secure the right of trial by jury in all tribunals exercising common law jurisdic-

tion, as it had theretofore been enjoyed. It was not intended to confer the right in any class of cases where it had not previously existed, nor was it intended to introduce it into special summary jurisdictions, unknown to the common law, and which do not provide for that mode of trial.

12. The right of trial by jury does not extend to suits in chancery which are of an equitable nature, without regard to the fact whether the cause of action was one of equitable cognizance prior to the adoption of the existing constitution or since. But it is not competent for the legislature to defeat the right of a jury trial in common law cases, by simply declaring they may be tried in courts of chancery, and that the proceedings therein shall conform to the proceedings in chancery. This would simply be an attempt to evade the provisions of the constitution.

13. The act of 1874, in regard to the dissolution of corporations, and the appointment of one or more receivers, is, in its nature, of an equitable character, and, therefore, is not void in not providing for a trial by jury. Even if a party is entitled, under the constitution, to such a trial, it does not necessarily follow that the act is unconstitutional in not expressly providing for such a trial upon the controverted facts. If it is a case in which the party is entitled to a jury, the constitution has already provided for that, and the presumption is, that the court would order the issues of fact submitted to a jury, unless the parties should waive the right.

14. RECEIVERS—*on dissolution of insurance companies.* Under the act of 1874, in relation to the dissolution of insurance companies, the court has no right to appoint a receiver until the company shall have been dissolved, or restrained from the further continuance of its business, and the court, by the first section, is not authorized to make any such order of dissolution, etc., until there has been a hearing upon the merits as to all parties interested.

15. PARTIES—*to petition to dissolve insurance company.* On a petition filed by the State auditor, to dissolve an insurance company, or to restrain its further transaction of business, the stockholders are not necessary parties, any more than its creditors. If relief or discovery is sought of the stockholders, or even of strangers, then they become necessary parties, but not otherwise.

16. JUDGMENT—*can not be attacked collaterally for errors.* In a suit by a receiver against the stockholders of an insurance company to recover unpaid subscriptions, etc., the fact that the court appointing the receiver did not first enter a final order or decree upon the merits, either dissolving the corporation, or restraining it from transacting further business, can not affect the right of the receiver in the suits brought by him, it not going to the jurisdiction, but being a mere error.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. HUTCHINSON & LUFF, and Mr. JOHN N. JEWETT, for the appellant:

The appointment of a receiver can not be questioned in a collateral proceeding. High on Receivers, sec. 203; *Vermont and Canada R. R. Co.* v. *Vermont Central R. R. Co.* 46 Vt. 792; *Howard* v. *Whitman,* 29 Ind. 557.

The primary object of the statute is to protect the rights of creditors and not to dissolve the corporation. *Fay* v. *Erie and Kalamazoo Railroad Bank,* Harrington, 194.

The right of creditors to proceed against stockholders promptly ought to be protected, and where a dissolution of a corporation is required to enable them to proceed against stockholders, no decree of dissolution is necessary. Acts of a corporation which destroy the end and object for which it was established, are equivalent to a surrender of its franchises, and for the purpose of enabling the creditors to sue, will work a dissolution of the company. *Slee* v. *Bloom,* 19 Johns. 456; *Peniman* v. *Briggs,* 1 Hopkins, 300; *Briggs* v. *Peniman,* 8 Cow. 387; Angell & Ames on Corp. sec. 773; 2 Kent's Com. 311, 312.

The appellant has no adequate remedy at law, and a suit in equity is the only proper form of action. The *pro rata* amount of liability can only be ascertained by a court of chancery. *Railroad Co.* v. *Marseilles,* 84 Ill. 646; *Adler* v. *Milwaukee P. Brick Mfg. Co.* 13 Wis. 57; *Salmon* v. *Hamborough Co.* 1 Cases in Ch. 204; *Spear* v. *Grant,* 16 Mass. 9; *Briggs* v. *Peniman,* 8 Cow. 387; Thompson's Liability of Stockholders, secs. 13–15.

The act under which the receiver was appointed does not require the stockholders to be made parties, and there is no rule of the common law or equity practice requiring notice to them. *Upton* v. *Hansboro,* 3 Biss. 426.

The court, through its receiver, ascertained the amount of indebtedness of the company, which is fully set out in the bill, and is presumed to be correct, but the stockholders had ample opportunity to make objection to the allowance of the claims.  They would now be allowed to show a mistake if they could, which would be corrected by the court, and until they can show that a mistake has been made, they are bound by the finding of the court.  *Howard* v. *Whitman*, 29 Ind. 557; *Hall* v. *U. S. Ins. Co.* 5 Gilm. 484; *Upton* v. *Hansboro*, 3 Biss. 426; *Payson* v. *Storer*, 3 Dill. 422; *Sanger* v. *Upton*, 1 Otto, 58; *Jackson* v. *Roberts*, 31 N. Y. 304; *Sands* v. *Hall*, 42 Barb. 657.

The unpaid subscriptions and unpaid stock are a trust fund to be held for the benefit of creditors, and it can not be used or disposed of in any manner inconsistent with the purposes for which it is held.  *Sanger* v. *Upton*, 1 Otto, 60; *Sawyer* v. *Hoag*, 17 Wall. 620; *Curren* v. *State of Alabama*, 15 How. 308; *Briggs* v. *Peniman*, 8 Cow. 387; *Wright* v. *Petrie*, 1 Sm. & Marsh. Ch. 282; *Hightower* v. *Thornton*, 8 Ga. 486; *Payne* v. *Bullard*, 23 Miss. 90; *Adler* v. *Pat. Brick Co.* 13 Wis. 460.

The stockholder can not be released from his liability to the creditors of the company until he makes a valid transfer of his stock, without paying the company a full consideration therefor.  *Osgood* v. *King*, 42 Ia. 478; *Roman* v. *Frey*, 5 J. J. Marsh. 634; *Steinhope's case*, L. R., 1 Ch. App. 161; *Marcy* v. *Clark*, 17 Mass. 333; *Tuckerman* v. *Brown*, 33 N. Y. 297; *Henderson* v. *Royal British Bank*, 7 El. & Bl. 356; *Wood* v. *Pierce*, 2 Disney, 211; *Gillett* v. *Moody*, 3 N. Y. 479; *Burnham* v. *U. M. Ins. Co.* 36 Ia. 632.

The statute makes it the duty of the receiver to collect the assets.  The unpaid subscriptions to the capital stock of the company are assets, and the injunction should have been granted.  *Sanger* v. *Upton*, 1 Otto, 60; *Calkins* v. *North Am. Lloyd*, 2 Lansing, 12; *Payson* v. *Stover*, 2 Dill. 426; *Rankin*

v. *Elliot*, 16 N. Y. 377; *President, etc.* v. *President, etc.* 23 Pick. 480.

At common law a corporation may be dissolved for a forfeiture. It is well settled that it is a tacit condition of a grant of incorporation that the grantees shall act up to the end or design for which they were incorporated, and hence, through neglect or abuse of its franchises, may forfeit its charter, as, for a condition broken, or for a breach of trust. Angell & Ames on Corp. sec. 774; *Commonwealth* v. *Union Ins. Co.* 5 Mass. 230; *State Bank* v. *State*, 1 Blackf. 279; *Commonwealth* v. *Commercial Bank of Pennsylvania*, 28 Pa. St. 383.

If a corporation so manages its affairs as to be in a condition which renders its further continuation in business hazardous to the insured, then the State has the right to proceed against it for the neglect or abuse of its franchises, and its charter may be forfeited for conditions broken. This is a common law ground of forfeiture.

The common law remedy was by writ of *scire facias* or *quo warranto*. The remedy, however, may be changed by the legislature, and the act of 1874 only affects the remedy. 3 Parsons on Contracts, 552; Cooley's Const. Lim. (1st ed.) 359; *Richardson* v. *Egan*, 87 Ill. 138; *Wood* v. *Child*, 20 id. 209; *Tennessee* v. *Sneed*, 6 Otto, 69.

The general doctrine of the right of the legislature to pass general laws to regulate corporations in the exercise of their franchises, so as to protect the public from their insolvency, and a misuse of their franchises, has been affirmed in this and other States. *Railroad Co.* v. *Loomis*, 13 Ill. 548; *Munn* v. *People*, 69 id. 80; *Fertilizing Co.* v. *Hyde Park*, 7 Otto, 659; *Sinking Fund Cases*, 9 Otto, 718; *Rodney* v. *State*, 4 Sm. & Marsh. 439.

Mr. FRANCIS H. KALES, for the appellees:

The act of 1874 is unconstitutional as against companies organized under special charters prior to the new constitution.

It attempts to deprive courts of law of their customary and constitutional jurisdiction, and to confer it on courts of equity. Constitution of 1848, art 13, secs. 6 and 8; Constitution of 1870, art. 2, secs. 2 and 5; *Baker* v. *Backus*, 32 Ill. 97; Angell & Ames on Corp. secs. 774–778; Field on Corp. 554; 2 Potter on Corp. sec. 712; *Penn* v. *Holme*, 21 How. 481; *Hepp* v. *Babier*, 19 id. 271.

The act attempts to deprive stockholders of a corporation of their liberties and franchises without trial by jury. Section 9 of the act of 1874; Angell & Ames on Corp. secs. 774–778; Cooley's Const Lim. (4th ed.) p. 513, note 6; *Haines* v. *Levin*, 51 Pa. St. 512; *People* v. *Cicott*, 16 Mich. 283.

The act impairs the obligation of the charter contract between the State and the company. Sec. 1 of the Charter; sec. 1 of the act of 1874, p. 4; Cooley's Const. Lim. 348; *Dartmouth College* v. *Woodward*, 4 Wheat. 418; *McCracken* v. *Hayward*, 2 How. 612; *Palairet's Appeal*, 67 Pa. St. 479.

If the act of 1874 is valid, still the present bill is prematurely brought. The matter has never yet reached that stage when the circuit court could lawfully appoint a receiver.

It is well settled that where stockholders may be personally liable, a judgment against the corporation alone is not sufficient of itself to charge the stockholders on account of individual liability. *Chandler* v. *Brown*, 77 Ill. 333; *Witherhead* v. *Allen*, 3 Keyes, 562; *Hewitt* v. *Adams*, 50 Me. 271; *Wiswall* v. *Starr*, 48 id. 401; *Atwood* v. *R. I., etc.*, 1 R. I. 376.

Courts of equity have no jurisdiction to try the liability of stockholders of a corporation when it is imposed by the charter. *Phil. Fire Ins. Co.* v. *Cent. Nat. Bank, etc.* 1 Bradw. 344; *Lamar Ins. Co.* 84 Ill. 575.

Mr. JOHN EVANS, and Mr. DAVID H. MOFFITT, also for the appellees:

The record does not show such performance of the requirements of the statute as will enable the receiver to maintain

the suit. *Smith* v. *Huckaby,* 53 Ala. 191; *Chandler* v. *Brown,* 77 Ill. 373; *Supervisors, etc.* v. *People,* 7 Hill, 513; *City Ins. Co.* v. *Commercial Bank,* 68 Ill. 348.

The complainant has an adequate and complete remedy at law, and a bill in equity will not lie. *Adler* v. *Milwaukee P. Brick Mfg. Co.* 13 Wis. 57; *Freeman* v. *Winchester,* 18 Miss. 577; High on Receivers, secs. 207 and 204; *Upton* v. *Hansborough,* 3 Biss. 417; *Sanger* v. *Upton,* 1 Otto, 56; *Kennedy* v. *Gibson,* 8 Wall. 505; *Tobey* v. *Russell,* 9 R. I. 58; *Mann* v. *Pence,* 3 N. Y. 415; *Herron* v. *Vance,* 17 Ind. 595; *Price* v. *Grand Rapids etc. R. R. Co.* 18 Ind. 137; *Culver* v. *Third Nat. Bank,* 64 Ill. 568; *Winans* v. *McKean R. R. & N. Co.* 6 Blatch. 215; *Lamar Ins. Co.* v. *Moore,* 84 Ill. 575; *Hall* v. *U. S. Ins. Co.* 5 Gilm. 485.

Messrs. Holmes, Rich & Noble, for the appellee Wm. T. Allen.

Mr. Frank J. Crawford, for the appellees Bowen *et al.*

Mr. G. A. Follansbee, for the appellee Geo. Bowers.

Messrs. Jones & Palmer, for the appellees:

The bill was multifarious, and prayed for different kinds of relief as against different classes of defendants. *Phil. Fire Ins. Co.* v. *Central Bank,* 1 Bradw. 344; *Baker* v. *Backus,* 32 Ill. 79.

Dissolution, in the absence of a statute conferring jurisdiction on a court of equity, is one for the sole determination of a court of law. 2 Wait's Actions and Defenses, 350; 2 Potter on Corp. sec. 719; Angell, sec. 778.

Call must be made. *Lamar Ins. Co.* v. *Moore,* 84 Ill. 575; *Gibbart* v. *Indiana R. R. Co.* 12 Ind. 484; *McClosky* v. *Grand Rapids & Ind. R. R. Co.* 16 id. 96; *Ross* v. *Lafayette and Indianapolis R. R. Co.* 6 id. 297; *Chandler* v. *Keith,* 42 Ia. 99; *Trumbull* v. *Payson,* 5 Otto, 420; *Chandler* v. *Siddle,* 3 Dill. 477.

Calls, how made. Receiver should have done so in the original, and averred the facts in his petition. *Chandler* v. *Keith,* 42 Ia. 99; *Trumbull* v. *Payson,* 5 Otto, 418; *Sanger* v. *Upton,* 1 id. 56; *Payson* v. *Stover,* 2 Dill. 427; *Bailey* v. *Sanger,* 4 id. 463; *Pullman* v. *Upton,* 6 Otto, 328; *Howard* v. *Whitman,* 29 Ind. 557; *Embree* v. *Shideler,* 36 id. 423; *Tobey* v. *Russell,* 9 R. I. 58; *Bangs* v. *McIntosh,* 23 Barb. 591; *Upton* v. *Hansborough,* 3 Biss. 417; *New Orleans Gas Light Co.* v. *Bennett,* 6 La. An. 460; *Downs* v. *Hammond,* 47 Ind. 131; *Thomas* v. *Whalton,* 31 Barb. 172; High on Receivers, secs. 324, 326–330.

Action by receivers; the pleading must aver the debts and necessity for the call. He must show his title. *Lamar Ins. Co.* v. *Moore,* 84 Ill. 575; *Chandler* v. *Keith,* 42 Ia. 99; *Chandler* v. *Brown,* 77 Ill. 333; *Screven* v. *Clark,* 48 Ga. 41; *Ingersoll* v. *Cooper,* 5 Blackf. 426; *Rowell* v. *Chandler,* 83 Ill. 288; *Manlove* v. *Barger,* 38 Ind. 211; *Battle* v. *Davis,* 66 N. C. 252.

Notice of call precedent to suit. *Cole* v. *Joliet Opera House,* 79 Ill. 96; *Heaston* v. *Cincinnati R. R. Co.* 16 Ind. 275; *Corydon Co.* v. *Pell,* 4 Blackf. 472; 1 Redf. on Railroads, 159–160 and notes, 184 sec. 51; High on Receivers, secs. 204, 208, 324.

Action for calls at law. The liability is a legal one; a debt on simple contract. Common *indebitatus* count. Angell & Ames on Corp. sec. 577; *Willard R. R. Co.* v. *Blake,* 6 Hurl. & Norm. 410; *Peake* v. *Wabash R. R. Co.* 18 Ill. 88; 1 Chit. Pl. (last ed.) 114, 123, note; 2 Ibid, 225, 230, 451–3; *Sanger* v. *Upton,* 1 Otto, 62; *Culver* v. *Third Nat. Bank of Chicago,* 64 Ill. 528, 538; *Bank of Poughkeepsie* v. *Ibbotsun,* 24 Wend. 473; *Freeman* v. *Winchester,* 10 Sm. & Marsh. 577; 2 Redf. on Railroads, 601, 602; 1 Potter, sec. 227; Thompson, sec. 349.

The liability of stockholders for calls is several, not joint. *Stewart* v. *Lay,* 45 Ia. 604; *Bailey* v. *Sanger,* 4 Dill. 463.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The Republic Life Insurance Company, of Chicago, was incorporated by a special act of the legislature, approved March 27, 1869, and, by the terms of its charter, was to have a corporate existence for a period of fifty years.

It was authorized upon its organization, as therein provided, to do a general life insurance business, and, generally, to exercise the usual powers and privileges possessed by other companies in that kind of business. The company was duly organized during the same year, but no business seems to have been done by it until the spring of the following year, when its capital stock was increased from $500,000 to $5,000,000, and it thereupon commenced business under its charter, and so continued in business until the 25th day of May, 1877, when the Auditor of Public Accounts, under the provisions of the act of 1874, entitled "An act in regard to the dissolution of insurance companies," in force July 1, 1874, filed a petition in the Cook county circuit court against the company, setting forth, among other things, that the petioner "had lately caused an examination of the Republic Life Insurance Company, organized under the laws of this State, and that, from such an examination, he was of opinion the condition of said company was such as to render its further continuance in business hazardous to the insured therein," and praying that it might be enjoined from the further transaction of business, and also for the appointment of a receiver to take possession of its assets and wind up its affairs. Upon the filing of this petition, the company appeared, by counsel, and such proceedings were had under the petition that, on the same day, Samuel D. Ward, the appellant, was appointed receiver of the entire estate and effects of the company, and, as such, was authorized to take possession of the same, and to institute whatever legal proceedings might be necessary for that purpose, and the "company, its officers and

agents," were enjoined "until the further order of the court, from further proceeding with their said business," etc.

By the 6th section of the company's charter, it is provided that "the real and personal property of each individual stockholder shall be held liable for any and all losses and liabilities of the company, to the amount of stock subscribed or held by him, and not actually paid in, and that, in all cases of losses exceeding the means of the corporation, each stockholder shall be held liable to the amount of unpaid stock held by him." It also appears that, in pursuance of certain resolutions adopted by a meeting of the stockholders, on the 11th day of June, 1873, a large number of the certificates of stock, where but 20 per cent of the amount subscribed had been paid in, were surrendered to, and canceled by, the company, and new certificates issued to the holders, respectively, for the number of shares at par represented by the 20 per cent already paid in or secured by them, respectively, which is claimed by appellant to be fraudulent and void as against the creditors of the company.

The present bill is filed by appellant as receiver under and by virtue of the orders of court in the above proceeding by the Auditor, and the act of the legislature under which the same was had, against the defendants as stockholders of the company; its object being to have the action of the company, in cancelling the original certificates of stock in the manner above stated, set aside and annulled; and also to have an assessment of 60 per cent, or whatever amount the evidence may show is necessary, made upon all the stockholders, without regard to the attempted cancellation, for the purpose of meeting the liabilities of the company. The bill sets out fully all the above mentioned facts, including the proceeding by the Auditor and the several orders made by the court therein. It also shows that upon his appointment the appellant executed a bond as receiver, and, as such, took possession of all the effects of the company, and so continued in possession, without any objection on the part of the stockholders,

till the 7th of May, 1878, the day on which the bill in this case was filed. The bill also contains many other facts admitted by the demurrers, not necessary to be mentioned here, for the reason they do not materially affect the legal questions upon which this controversy depends.

The circuit court sustained demurrers to the bill, and the complainant electing to stand by it, a final decree was entered dismissing the same, which, on appeal, was affirmed by the Appellate Court of the first district.

At the March term, 1880, of this court, the case was before us on appeal from the Appellate Court, and, from the consideration then given it, we were of opinion that the judgment of the Appellate Court was right and, accordingly, affirmed it. It is again brought before us upon a petition for rehearing, for further consideration. We have given the case such additional investigation, reflection and thought as the time allotted us, and the circumstances, have afforded, and now proceed to give the conclusions we have reached, together with some of the reasons which, in our judgment, sustain them.

One of the most important questions presented by the record in this case, and which has been elaborately argued by counsel on both sides, is the constitutionality of the act of 1874, under which the receiver was appointed. It is very clear, that if the act in question is unconstitutional, the appointment of the receiver was a nullity, and he has no right or authority to maintain the present proceeding, and the bill of appellant was, therefore, properly dismissed by the circuit court.

Its constitutionality is questioned by appellees on several distinct grounds: *First.*—It is claimed "the act impairs the obligation of the contract between the State and the company."

We do not propose to enter upon any general discussion of what is meant by "the obligation of the contract," nor do we deem it necessary to go into an extended examination of the cases with a view of eliminating a rule by which it may be

determined, in all cases, whether or not there has been an infraction of the provisions of the Federal and State constitutions which forbid the passage of any law by the legislature, " impairing the obligation of contracts," but shall proceed at once to inquire whether the legislation complained of in this particular case, shows a violation of that provision.

That part of the act in question, upon which the validity of the proceeding by the auditor mainly depends, provides: " That if the Auditor of State, upon examination of any insurance company incorporated in this State, is of the opinion that * * * * *its condition is such as to render its further continuance in business hazardous to the insured therein,* * * * * he shall apply by petition to a judge of any circuit court of this State to issue an injunction, restraining such company, in whole or in part, from further proceeding with its business until a full hearing can be had, or otherwise, as he may direct. It shall be discretionary with such judge either to issue said injunction forthwith, or to grant an order for such company, upon such notice as he may prescribe, to show cause why said injunction should not issue, or to cause a hearing to be had on complaint and answer, or otherwise, as in ordinary proceedings in equity, before determining whether an injunction shall be issued. He may in all such cases make such orders and decrees, from time to time, as the exigencies and equities of the case may require, and in any case, after a full hearing of all parties interested, may dissolve, modify or perpetuate such injunction, and make all such orders and decrees as may be needful, to suspend, restrain or prohibit the further continuance of the business of the company."

In the above recital, we have purposely omitted the several classes of cases provided for in the act, which do not concern or in anywise affect the provision upon which this case depends. Whether the act, as to the omitted classes, is constitutional, is a question we shall not consider, as it is not at all involved in the present controversy. The important

inquiry presented by the record, so far as the present question is concerned, is: Did the legislature have power to authorize the auditor to proceed and wind up the affairs of the company upon the grounds set forth in the petition in this case? If the legislature has power to declare that whenever it appears, from a judicial investigation, that an insurance company has so managed its affairs that its further continuance in business will be hazardous to the insured in such company, it shall be deemed a cause of forfeiture of its franchises, and thereupon to provide an appropriate remedy for enforcing the same, then the petition of the auditor, in our opinion, contained a sufficient statement of the jurisdictional facts to warrant the circuit court in proceeding with the cause, and any mere error that may have occurred during the progress of the suit, can not be attacked or inquired into in the present proceeding. The court having had jurisdiction of the subject matter of the complaint and of the defendant in the cause, its determination must be regarded as conclusive in all collateral proceedings. In determining whether the legislature has power to provide for the winding up of the company's affairs in the manner provided by the act, for the cause specified in the petition, we shall have to depend largely upon the general principles of law that lie around the immediate confines of the question in hand, for we have not been referred to, nor have we been able to find any adjudicated case of this or other courts exactly in point.

That the grant of a charter by the State to a private corporation, creates a contract between the State and the corporators of such company, is no longer an open question, and it would, therefore, be a useless occupation of time to reconsider the reasons by which that conclusion is reached. It follows, therefore, where the right to do so has not been reserved in the grant, that it is not within the power of the legislature, after the acceptance of such charter, to engraft upon it any new terms or provisions without the concurrence or assent of the corporation. Yet, in contracts of this kind, as in most of others, there

are annexed to them, by implication of law, certain terms and conditions which are as much a part of the contract as those which are expressly stated; and, upon this principle, the corporators of every such company are held to impliedly agree to take the privileges and immunities conferred by the charter, subject to the right of the State to reclaim them for any manifest misuser of them. So, every private corporation, in accepting its charter, impliedly undertakes and agrees, upon condition of forfeiture, that it will exercise the rights and privileges conferred upon it in furtherance of the objects and purposes of its creation, and not otherwise, and that it will so manage and conduct its affairs that it shall not become dangerous or hazardous to the safety or well being of the State or community in and with which it transacts its business.

This view necessarily results from some of the fundamental principles which underlie our political system. The accepted theory with us is, that all political power primarily resides in the people, and that governments are instituted by them for their common safety, good order and well-being.

To this end written constitutions are ordained, providing for the selection, from among the people, of several distinct classes of persons, or political agencies, among whom the powers of government are, by the provisions of most constitutions, so distributed that no one class is permitted to exercise any of the powers conferred upon either of the others. These political agencies, commonly called branches of government, are the representatives of the people in their sovereign capacity; and the powers thus conferred upon them, so far as they are essential to the attainment of the objects and purposes of the government, are held by them in trust for the people, and it is not in their power to delegate them to others, or to contract or barter them away.

If it be conceded that one legislature may rightfully, in any case, dispose of some portion of its legislative powers, so that the succeeding legislature would find itself possessed

of less power than its predecessor, it might, upon the same principle, dispose of another portion, and so this process of diminution might go on indefinitely, until the powers of legislation would be entirely exhausted.

While we do not believe the legislature possesses any such power, yet we concede it may, in the exercise of its legislative functions, enter into contracts by which the State will be bound to the same extent as individuals. But all such contracts must be regarded as subject to the right or duty of the legislature, in the exercise of its police power, to adopt such reasonable laws, rules and regulations as shall be necessary for the safety, good order and well-being of the people.

Nor does the grant of private charters by the State at all affect the right of the legislature to enact general laws for the better government of corporations and the regulation of their rights and franchises, provided it does not, under the pretense of regulating, substantially impair the rights themselves.

Private corporations, created for business purposes, are artificial beings, clothed with certain rights and privileges, and are permitted to own and acquire property for certain purposes and to a limited extent; and, when so created, they are subject to the same legislative control that natural persons are under like circumstances.

With certain constitutional limitations, the rights of all persons, whether natural or artificial, are subject to such legislative control as the legislature may deem necessary for the general welfare, and it is a fundamental error to suppose there is any difference in this respect between the rights of natural and artificial persons. They both stand precisely upon the same footing. While personal liberty is guaranteed by the constitution to every citizen, yet, by disregarding the rights of others, one may forfeit not only his liberty, but even life itself. So a corporation, by refusing to conform to the law of its creation, or by so conducting its business affairs as to defeat the objects and purposes of its promoters,

and the design of the legislature in creating it, may forfeit
the right to further carry on its business, and also its exist-
ence as an artificial being. The fact that the stockholders
may be personally injured by declaring a forfeiture of the
company's franchises, and causing its affairs to be wound up
in a case of this kind, is not a sufficient reason why it should
not be done, if the further continuance of its business would
be dangerous to community. In the proper exercise of the
police power, laws are often enacted by the legislature for
the common good, which materially affect the value of certain
kinds of property, by which a particular class of persons are
injured, yet such consequences do not at all affect the validity
of the legislation, and to such losses the maxim *damnum
absque injuria* applies. It is generally said one may do as he
pleases with his own property, but this is subject to the im-
portant qualification—he must please to do with it as the law
requires. He must use it in such a manner as not to injure
others in the enjoyment of theirs. While it might be very profit-
able to one to establish upon his own premises a soap factory,
or other offensive business, the law would not permit him to
do so if its establishment would injuriously affect the com-
fort or health of the neighborhood, or even of a single family.
The maxim *Sic utere tuo ut alienum non lœdas,* applies to all
such cases. We might go on indefinitely, giving instances
illustrative of the general principle that private inconven-
iences and losses are often imposed by the law for the com-
mon good, but it is unnecessary to do so. The principle is
well understood, and of constant application.

These general principles would seem to warrant the con-
clusion that the legislature is authorized, in the proper exer-
cise of the police power, to adopt such necessary legislation
and regulations as will effectually protect community from
losses and injury incident to a public business conducted by
a corporation under a charter from the State, where such busi-
ness has become hazardous, and will probably result in

39—97 ILL.

financial distress and disappointed hopes to those who, in ignorance of its condition, do business with it.

It is also urged that "the act changes the contract rights of the company, and thereby impairs the obligation of the contracts entered into by it with its policy-holders prior to the passage of the statute."

What we have already said is equally applicable to this objection. If the legislature, subject to the limitations we have mentioned, may, in the exercise of its police power, rightfully pass laws for the control and government of corporations, without regard to the time of their creation, as we hold it may, it follows that the contracts between the company and policy-holders were entered into subject to this right of legislation, and consequently the act in question is not obnoxious to the objection urged.

It is further said the act is *ex post facto in its operation.* Or, in other words, it is claimed that the financial condition of the company became hazardous, if at all, before the act of 1874, and that prior to that time such hazardous condition was no cause of forfeiture, and that, by the terms of that. act, its provisions are extended to pre-existing companies, including the Republic Life Insurance Company. *Stone et al.* v. *The State,* Sup. Court Miss., South. L. & J. R., July, 1880, 557; *Ruggles* v. *The People,* 91 Ill. 256; *Dunne* v. *The People,* 94 Ill. 120.

This position, in our view, is based upon a misapprehension of the scope and effect of the act. We do not understand it to create any new cause of forfeiture.

The business of an insurance company is to take risks in consideration of premiums paid therefor, and, whenever the financial condition of a company is such that it can not make good its losses, it has no right, in morals or law, to continue the business any longer; and to do so would be a palpable fraud upon those doing business with it.

By the common law, a misuser by a corporation, of its franchises, is a cause of forfeiture, and it is difficult to conceive

of a greater abuse of a company's franchise than to continue taking risks and accepting premiums when there is no probability of its ever being able to pay its losses, and such an abuse of its franchises is a good cause of forfeiture independent of the statute.

Even admitting no case can be found prior to the act of 1874, in which it has been held the taking of risks and receiving of premiums by an insurance company, without any present or prospective ability to pay losses, is a cause of forfeiture, it does not, therefore, follow that the principles upon which courts act, in revoking charters, do not warrant the dissolution of an insurance company, for such cause. Moreover, the legislature must be held to have the requisite power to meet new dangers and complications as they arise. As the State increases in wealth and power, and business interests become more varied and diversified, new complications from time to time arise, requiring the application of existing principles that have hitherto lain comparatively dormant, and it is the unquestioned right of the legislature, as shown by immemorial usage, to remind the people of the existence of such principles, by presenting them anew in statutory form, or, in other words, to enact statutes declaratory of the common law.

The statute then simply affords a new and highly appropriate remedy for reclaiming, by the State, the rights and privileges conferred upon companies by their charters where there has been a misuser or manifest abuse of them, and such an act the legislature was authorized to pass.

It is next urged that the statute is unconstitutional, for the reason it does not provide for a trial by a jury, and the provisions of the present constitution, and also that of 1848, with respect to this subject, are cited and relied on. The right in question pertains exclusively to the remedy, and it is, therefore, competent for the legislature to either extend it or contract it, except so far as it is prohibited by constitutional restrictions. No disposition, however, has ever been mani-

fested on the part of the legislature or constitutional conven-
tions to abridge it; but, on the contrary, from the formation
of the State government to the present time, the right, as it
existed by the common law when transplanted in this country by
our English ancestors, has been fully recognized and enforced
by the courts, constitutional guarantees, and legislative enact-
ments, so that it exists at the present time substantially as it
did then, except so far as it may have been modified by long
and uniform usage.   The constitution of 1818 provided that
" the right of trial by jury shall remain inviolate;" that of
1848, that " the right of trial by jury shall remain inviolate
and shall extend to all cases at law without regard to the
amount in controversy;" and that of 1870, that "the right
of trial by jury, as heretofore enjoyed, shall remain invio-
late, but the trial of civil cases, before justices of the peace,
by a jury of less than twelve men, may be authorized by
law."

These several provisions, so far as the present inquiry is
concerned, practically amount to the same thing.

The constitution of 1870, by which the question under
consideration must be determined, guarantees the right of
trial by a jury to all persons, whether natural or artificial,
to the same extent and in the same manner it had been enjoyed
previous to its adoption.   The provisions of the previous
constitutions above cited were never regarded, so far as we
are advised, as being mandatory upon courts of equity, if,
indeed, as having any application to proceedings in those
courts.   And it was, and still is, under the present constitu-
tion, the constant practice of those courts to decide, without
the intervention of a jury, important questions of fact,
involving property rights, without at all consulting the
wishes of the parties to the proceeding; whereas, if the same
questions were to arise in a common law action, either of the
parties to the suit would have the constitutional right to have
them passed upon by a jury.

And the right of a court of equity to pass upon questions of this kind does not depend upon the fact that the cause of action was one of equitable cognizance prior to the adoption of the existing constitution. It is sufficient if it is one in fact, without regard to when it became so, or was first recognized by the courts as such. It is a fact well understood by all who are familiar with the history of courts of equity, that their jurisdiction, from the earliest times to the present, has been of a gradual and constant growth.

Originally, the subjects over which they assumed jurisdiction were comparatively few, but in process of time they have gradually increased to an almost indefinite extent. Nor is it important whether this gradual growth in their jurisdiction is attributable to direct legislation or to the enlarged views of the eminent chancellors who have presided over and shed so much lustre upon those courts. It is sufficient if the subject matter of the suit is one of equitable cognizance, without regard to when it first became so or was recognized as such, and in all such cases, except where some statute has otherwise expressly provided, the court may, if it thinks proper to do so, pass upon all questions of fact involved in the controversy without the intervention of a jury. Of course it would not be competent for the legislature to defeat the right of trial by a jury in common law cases by simply declaring they might be tried in courts of chancery and that the proceedings therein should conform to the proceedings in chancery causes. This would simply be an attempted evasion of the provisions of the constitution.

Where a new class of cases are, by legislative action, directed to be tried as chancery causes, it must appear that, when tested by the general principles of equity, they are of an equitable character, and can be more appropriately tried in a court of equity than in a court of law. And if of this character, when brought in a court of equity they stand upon the same footing with other causes, and the court will have

the right, as in other cases, to determine all questions of fact without submitting them to a jury.

Testing the class of cases provided for by the act of 1874, under which the proceeding by the Auditor was had, it must be conceded they are, in many respects, of an equitable character, and could not well be tried except in a court of equity. The proceeding contemplated by the act, if contested, will, in every case, necessarily involve an investigation of the entire affairs of the company, including the adjustment of complicated accounts, which could scarcely be done at all in a proceeding at law. A suit of this kind is not a mere statutory legal action required to be prosecuted on the equity side of the court, which might, if the law so directed, be brought with equal convenience and propriety on the law side,—but, on the contrary, it is, both in its procedure and in its nature and effect, an equitable action. This, then, being the character of the proceeding provided for in the act, we are unable to perceive any more necessity for a jury in it than in any other chancery case, and we are therefore of opinion that the act is not unconstitutional because it did not expressly provide for a jury. But even admitting that a party is entitled, under the constitution, to have the controverted facts arising under a proceeding of the kind, submitted to a jury, it does not necessarily follow that the act is unconstitutional because it does not expressly provide for a jury, for if it is a case in which the party is entitled to a jury, the constitution has already provided for that, and the presumption is that the court would order the issues of fact submitted to a jury unless the parties, by agreement, should dispense with it.

The constitutional provisions we have cited were designed simply to secure the right of trial by jury in all tribunals exercising common law jurisdiction, as it had theretofore been enjoyed. It was not intended to confer the right in any class of cases where it had not previously existed. Nor was it intended to introduce it into special summary jurisdic-

tions unknown to the common law, and which do not provide for that mode of trial. *Johnson* v. *Joliet and Chicago Railroad Co.* 23 Ill. 203 ; Sedgwick on Stat. and Const. Law, 549; *Ross* v. *Irving,* 14 Ill. 171. We do not think the objection is well taken.

Finally, it is urged that the act is unconstitutional for the reason it "deprives the stockholders of their property, liberties and franchises, without due process of law." We do not see any force in this objection. The act contemplates and provides for a full hearing upon due notice to all parties interested, and if, by the general principles of law and the practice of courts of chancery, the stockholders are not fully represented by the corporation itself, and should, therefore, be personally brought into court, there is nothing in the act that forbids it; but on the contrary, a proper construction of it would require it to be done, and if it was not done in this particular case, it is not the fault of the act, but a mere error in the proceedings under it. There is nothing in this objection.

It is also claimed by appellees, that before the court was authorized to appoint a receiver, there must have been, in the language of the first section, "a *full* hearing of all the parties interested," and a final decree rendered dissolving or restraining the corporation "from further continuance of its business." This conclusion is evidently warranted by the language of the fifth section. It provides that "when * * * the corporation is restrained from further *prosecution of its business, or is dissolved,* as hereinbefore provided, the court, upon the application of the Auditor, or of a member, stockholder, or creditor, may, at any time before the expiration of said two years, appoint one or more persons to be receivers, to take charge of the estate and effects of the company," etc. This language, taken in connection with the last sentence of the first section, above cited, leaves but little room, if any, to doubt that it was not the design of the legislature that the corporation should be dispossessed " of its estate and

effects" without an opportunity of first being heard upon the merits. The first section authorizes the court, "*after* a full hearing of all parties interested, to dissolve, modify, or perpetuate such injunction, and make all such orders and decrees as may be needful to suspend, restrain, or prohibit the further continuance of the business of the company," and the fifth section authorizes the court to appoint one or more receivers "*when*  * * *  the corporation is restrained from further prosecution of its business, or is dissolved," etc. It thus seems to be clear, the act does not contemplate the appointment of a receiver until the company shall have been dissolved or restrained from the further continuance of its business, and the court, by the first section, is not authorized, as we have just seen, to make any such order of dissolution, etc., until there has been a hearing upon the merits, and such we hold to be the proper construction of the act.

It is further contended by appellees, that the expression "all parties interested," occurring in the first section, includes the stockholders of the company, and that they were, therefore, necessary parties to the proceeding, and that the court, having proceeded to the appointment of a receiver without having them before it, its action is not binding upon them. Or, in other words, the court not having jurisdiction of the persons of the stockholders, and they being indispensable parties to the proceeding, the court acted without jurisdiction in making the appointment, and hence the receiver has no right or authority to maintain the present suit. Upon the former consideration of this case a majority of the court assented to this view of the question, but, upon further consideration, we are satisfied the position is not tenable.

The general rule unquestionably is, that where some right is sought to be enforced against a corporation, and the relief asked will only affect the stockholders as stockholders, and no discovery nor relief is sought against them as individuals, then they are unnecessary parties to a bill in chancery.

Treating the petition as a bill, and testing the question by this general rule, the stockholders were not indispensable parties to the proceeding, for the petition neither seeks discovery nor relief against the stockholders. The only way in which they are affected by the proceeding is in their character as stockholders, and in that character, where nothing is required of them personally, they are sufficiently represented by the corporation itself,—hence the general rule is, that judgments and decrees are at least *prima facie* binding on the corporators or stockholders.

In various parts of the act the company is referred to as the party against which the proceedings are assumed to have been brought, and, while the act evidently contemplates cases where the proceeding will be against parties other than the corporation itself, we are unable to find any expression in it that necessarily refers to the stockholders; and, if they were indispensable parties in every case, it is but reasonable to suppose the act would have so provided, or, at least, would have contained some specific reference to them as such, as it has with respect to the company. Upon more mature consideration, therefore, we are of opinion that by the expression " all the parties interested," nothing further was intended than that the court should have before it, at the hearing, all such parties as by the general rules of chancery procedure are deemed necessary and proper parties. Indeed, that provision requires nothing more than what the general principles of law would require without it. It is the duty of the complainant in every suit in chancery to have "all parties interested" before the court, either as co-complainants or defendants. And that is all it requires. So the statute is really, so far as that question is concerned, but declaratory of the existing law.

Under this construction of the act, the stockholders might or might not be necessary parties, depending altogether upon the circumstances in each particular case.

Suppose, for illustration, the stockholders, or some part of them, were unlawfully using or converting the property of the company to their own use, and one of the objects of the petition was to obtain discovery with reference to their conduct, or to charge the stockholders personally on account of the property; or, in short, to obtain any relief against them with respect to it. In such case the stockholders, or so many of them as were implicated, and against whom relief was sought, would be proper and necessary parties. And even strangers might become necessary parties in the same way. Again, there might be special circumstances under which it would be proper to admit stockholders, or even strangers, as parties, on their own petition. In any of the cases supposed the parties thus brought before the court would, in connection with the company itself, sufficiently answer what was intended by "all parties interested."

There is no principle upon which it can be held that the stockholders, simply as stockholders, are necessary parties to a proceeding of the kind, without including the creditors of the company also. Neither of them have anything more than an equity in the assets of the company, and the latter have the superior equity, for the stockholders are entitled to nothing until the creditors are fully paid. 1 Perry on Trusts, sec. 242. The corporation is the owner of the property, and not the stockholders. To hold that all the stockholders and creditors of the company are necessary parties in every case, would have the effect of defeating the objects and purposes of the act altogether, for they are, presumably, so numerous it would be wholly impracticable to get them before the court, and even if that could be done, the proceeding would necessarily be attended with such delay, inconvenience and enormous expense, that it could result in no benefit to any one, but, in the end, would absorb the entire assets of the concern.

As already stated, we are of opinion the act contemplates a hearing on the merits before the appointment of a receiver;

but, in the present case, as the facts in the petition were admitted, the necessity of a hearing was obviated; but the court should, before appointing the receiver, have entered a final order or decree upon the merits, either dissolving the corporation or restraining it from the further continuance of its business. But the failure to do this was merely error, which did not at all affect the jurisdiction of the court, and hence it is of no importance in the present case,—for, if the court had jurisdiction of the subject matter of the suit and of the parties, the regularity of the receiver's appointment can not be inquired into in the present suit. Whether the error in question is such an one as would require a reversal of the order in that proceeding, if of such a character as to be reviewed, is not before us, and can not, therefore, be determined on this appeal.

It follows, from what we have said, the circuit court erred in sustaining the demurrers to the bill and rendering a final decree against the complainant, and it was, therefore, error in the Appellate Court to affirm that decree.

The judgment of the Appellate Court is reversed, and the cause remanded to that court with directions to reverse the decree of the circuit court, and remand the cause for further proceedings in conformity with the views of this court, as expressed in this opinion.

*Judgment reversed.*

Mr. JUSTICE WALKER, dissenting:

I am unable to concur in the conclusion reached in this case. I hold, that until there was a decree rendered, holding that the corporation had forfeited their franchises and dissolving the body, the court had no power to appoint a receiver to take charge of its property and assets, with the powers incident to such an appointment. Such a finding and decree, I hold, are absolutely essential to the exercise of the power. I therefore hold that appointment was void. A law authorizing the appointment, before such a finding and decree,

would not be according to due course of law, and would be unconstitutional.

I hold, all of the stockholders were parties in interest, and are embraced in the statute, and they should have been made parties to the bill to dissolve the corporation. I think the statute so requires, and we have no power to inquire into the question whether it is the most proper.

Mr. CHIEF JUSTICE DICKEY, also dissenting.