HENRY YATES, Insurance Superintendent,

*v.*

THE PEOPLE *ex rel.* Frank O. Anderson.

*Opinion filed February 17, 1904.*

1. INSURANCE—*when an insurance corporation is subject to legislative control.* An insurance corporation organized under a special charter containing no reservation of legislative control, which adopts a change of name in accordance with a subsequent act containing a clause subjecting the corporation to the operation of general insurance laws thereafter passed, is as much subject to legislative control as though the reservation were in its original charter.

2. SAME—*when charter of insurance company becomes extinct.* Under section 3 of the Insurance act of 1874, which has been held constitutional, (97 Ill. 593, and 101 id. 82,) the charter of an insurance company which has ceased for a period of one year to transact the business for which it was organized is deemed extinct, in all respects as though it had expired by its own limitation.

3. MANDAMUS—*mandamus should not issue in a doubtful case.* The writ of *mandamus* should not be issued unless the petitioner shows a clear right to the writ and a clear obligation upon the respondent to perform the act sought to be compelled.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is a petition for *mandamus*, filed in the Superior Court of Cook county on January 17, 1903, by the People upon the relation of Frank O. Anderson, defendant in error, against Henry Yates, as insurance superintendent, plaintiff in error, praying that the writ of *mandamus* be directed to the insurance superintendent, requiring him to issue a certificate of authority to the Continental Insurance Company to transact the business of insurance according to the provisions and privileges, granted in the several acts of the legislature of Illinois hereinafter mentioned, and also requiring him to issue certificates of authority to certain persons, thirty-three in number, therein named, appointed by said company as agents. Plaintiff in error, as insurance superintendent, entered

his appearance on January 30, 1903, and filed his answer
to the petition on February 5, 1903. On March 4, 1903,
a general demurrer was filed by the relator to the an-
swer of plaintiff in error. On the same day, March 4,
1903, plaintiff in error filed an amended answer, and af-
terwards on March 17, 1903, was granted leave to with-
draw his original answer, and, the same being done, the
amended answer was ordered to stand as the answer to
the petition. On the same day the defendant below,
plaintiff in error, had leave to amend the amended an-
swer instanter, and, the same being done, it was ordered,
on motion of defendant in error's attorney, that the de-
murrer of defendant in error to the amended answer stand
as a demurrer to the amended answer as amended. The
demurrer to the amended answer as amended was sus-
tained. Thereupon, on the same day, to-wit, March 17,
1903, the court ordered that a writ of *mandamus* issue to
the plaintiff in error, requiring him to issue a certificate
of authority to the Continental Insurance Company to
transact the business of insurance in this State upon the
payment of the usual fee therefor, and also to issue cer-
tificates of authority to persons, appointed by said com-
pany as agents in this State, (upon payment of the usual
fees therefor,) within three days, according to the prayer
of the petition. To the judgment and order of the court
plaintiff in error made objection, which objection was
overruled, and exception taken. Motions for new trial
and in arrest of judgment were overruled. The present
writ of error is sued out for the purpose of reviewing
the judgment, so entered by the trial court, granting
the writ of *mandamus* in accordance with the prayer of
the petition.

The petition for *mandamus* alleges that the relator,
Frank O. Anderson, is the president of, and a stock-
holder in, the Continental Insurance Company; that the
Continental Insurance Company is an organized and ex-
isting fire insurance company by virtue of the following

acts of the legislature of Illinois, to-wit: "An act to incorporate the Tornado Insurance Company," approved February 22, 1861; "An act to amend an act entitled 'An act to incorporate the Tornado Insurance Company,'" approved February 12, 1863; "An act to amend the charter of the Tornado and Fire Insurance Company of Freeport, Illinois," approved March 16, 1865; "An act to amend the charter of the Fire and Tornado Insurance Company," approved March 7, 1867; and "An act to amend the charter of the Continental Insurance Company," approved March 30, 1869. The first act creates the Tornado Insurance Company with power to insure against tornadoes, storms and winds. The second act of 1863 changed the name of the corporation to the Fire and Tornado Insurance Company, and extended its powers to insure against fire and lightning, and provided that its capital stock should consist of premium notes, and cash premiums, and the ten per cent lien of the company by virtue of its charter, the act of 1861 having provided that each policyholder should be a member of the company, and that the company should have, to the extent of ten per cent of the amount insured, a lien upon the building insured to secure the payment of the insured's shares of the company's losses and expenses. The third act of 1865 authorizes the company to receive for the better security of policyholders a guaranty capital of not more than $500,000.00, such capital to consist in hypothecated stock, mortgages, or real estate, satisfactory to the board of directors or executive committee, and divided into $100.00 shares, each share having a vote in the election of board of directors. The fourth act of March 7, 1867, changed the name of the company from that of the Fire and Tornado Insurance Company to the "Continental Insurance Company;" and the third section of the act of 1867 provided as follows: "Nothing in this act, or in the act, of which this is an amendment, shall be construed so as to permit said company to do banking business, or exempt

said company from the operation of such general laws as may hereafter be passed upon the subject of insurance companies." The fifth act of 1869, being "An act to amend the charter of the Continental Insurance Company," provided that the board of directors of said company should be authorized and empowered to remove the principal office of the said company to the city of Chicago, whenever the best interests of said company might require said removal to be made. The petition alleges that the principal office of the company was moved to the city of Chicago, in October, 1902, thirty-three years after the passage of the act of March 30, 1869.

The petition further alleges that the company has maintained a full quota of officers and directors, and is engaged ·in the business of fire and marine insurance; that it has a guaranteed capital of $100,000.00, and a surplus of $20,000.00; that, on November 22, 1900, it filed the statutory statement of condition with the insurance superintendent; that, upon its request, it was examined by said superintendent, and a report filed, approving its condition; that it is a practice of the insurance superintendent to issue certificates of authority to any company entitled thereto, and to issue certificates to each agent appointed by duly organized companies, and to receive, as compensation therefor, fifty cents each, and that it is the duty of such superintendent to issue such certificates to such agents; that the company has appointed agents, and applied to the insurance superintendent for such certificates for them, and paid fifty cents in fees for each certificate; and that the superintendent has refused to issue certificates to such agents, and also to issue a certificate of authority to the company.

The amended answer stated that Anderson assumed to be the president and a stockholder of the company; that the company was at one time organized under said acts of the legislature, and was at one time legally in the insurance business, but that it is now engaged in

such business without warrant of law, in this, that its charter is extinct. The answer denies that the company filed with the superintendent a statutory statement of its condition, and denies that examiners appointed by the superintendent passed on and accepted its condition; that the company tendered to the superintendent on or about November 24, 1902, a pretended statement of its condition, which he refused to file for reasons hereinafter stated. The amended answer admits that it has been the practice of the superintendent to issue certificates to the companies and to the agents, and to receive the fees therefor, as alleged in the petition, and that it is the superintendent's duty to issue such certificates upon the payment of the fees, but only when the companies are legally authorized to do business in the State; and it alleges that the said pretended insurance company is not entitled to certificates because its charter is extinct; that it has attempted to appoint agents, but has no power to make such appointment. The amended answer denies that the company ever paid the superintendent any fees, but states that it has sent him checks, which he has not accepted. The amended answer admits that the superintendent has refused to issue agents' certificates.

The amended answer contains the following allegation, to-wit: "That said company has for a period of more than one year, and has for a period of more than one year prior to the beginning of this suit, ceased to transact the business for which it was organized, and further says that the charter of said company should be deemed and held extinct in all respects, as if said charter had expired by its own limitations, and further says that said charter of said company, prior to the beginning of this suit, was and now is extinct in all respects as if said charter had expired by its own limitations; and further says that this court should by decree fix the time within which said company should close its concerns; that, for the reasons aforesaid, the said company has

usurped, intruded into and unlawfully exercised, and is usurping, intruding into and unlawfully exercising a franchise in this State improperly and without warrant of law."

The amendment to the amended answer sets up that the Continental Insurance Company above named, on or about 1887, ceased to transact any business whatever for which it was organized, and remained out of business for sixteen years thereafter, and did no business after it ceased business, except as set forth in the amended answer; that said company then and there abandoned its charter, and ceased for sixteen years prior to the beginning of this suit to exercise any of the corporate powers granted to it by its charter, and thereby omitted necessary acts; and that such omission amounted to a surrender of its privileges and rights as a corporation; that said corporation now exercises powers not conferred upon it by law, and has never since the organization of the insurance department of this State (in 1893) transacted any business within the State with the approval of the department.

FRED H. ROWE, for plaintiff in error.

J. H. WESTOVER, for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The main question, presented by the record in this case, is whether or not, at the time of the filing of the petition for *mandamus* herein, and prior thereto, the charter of the Continental Insurance Company had become extinct.

The plaintiff in error claims that he, as insurance superintendent, was under no obligation to issue the certificates of authority applied for, because, under section 3 of the act of 1874 entitled "An act in regard to the dissolution of insurance companies," in force July 1, 1874, (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2285), the charter

of the Continental Insurance Company was as extinct, as though it had expired by its own limitation.

Section 3 of said act of 1874 is as follows: "The charters of all insurance companies incorporated in this State, which, either from neglect or by vote of their members or officers, or in obedience to the decree of any court, have ceased, or shall hereafter cease, for the period of one year, to transact the business for which they were organized, shall be deemed and held extinct in all respects, as if they had expired by their own limitation; and the circuit court shall have authority, upon application, by the petition of the Auditor of State, or of any person interested, to fix, by decree, the time within which such companies shall close their concerns: *Provided*, that this section shall not be construed to relieve any such company from its liabilities to the assured or any of its creditors." (Ibid. p. 2285).

The amended answer of plaintiff in error to the petition for *mandamus* alleged, that the Continental Insurance Company had, for a period of more than one year, and for a period of more than one year prior to the beginning of the *mandamus* suit, ceased transacting the business, for which it was organized; and the amendment to the amended answer alleged that said insurance company, on or about 1887, ceased to transact any business whatever, for which it was organized, and remained out of business for sixteen years thereafter, and abandoned its charter, and ceased, for the period of sixteen years prior to the beginning of the *mandamus* suit, to exercise any of the corporate powers granted to it by its charter. Defendant in error, the petitioner below, demurred to the amended answer and to the amended answer as amended, and thereby admitted the truth of the allegations, thus made in the answer. In effect, the plaintiff in error, defendant below, elected to stand by his amended answer, after having duly objected and excepted to the ruling of the court sustaining the demur-

rer thereto. After so sustaining the demurrer to the answer, the judgment or order, allowing the writ of *mandamus* in accordance with the prayer of the petition, necessarily followed. The court seems to have called the case for hearing, after sustaining the demurrer to the amended answer, as amended, and to have permitted the petitioner below to put in evidence the amended answer of the defendant below, and the amendment thereto. This was unnecessary. It was sufficient to decide the case upon the pleadings. The same result, however, followed, as the consequence of permitting the amended answer and the amendment thereto to be introduced in evidence, as would have necessarily followed if the cause had been heard merely upon the pleadings after the demurrer to the answer was sustained. The petitioner below having introduced in evidence, as its own proof, the amended answer and the amendment thereto, is bound by the statements therein, that the company had, for a period of more than one year prior to the beginning of the suit, ceased to transact the business, for which it was organized, and had remained out of business for sixteen years after 1887. (*Fish* v. *McGann*, 205 Ill. 179).

Did the court below decide correctly in sustaining the demurrer to the amended answer as amended? Defendant in error insists that section 3 of the act of July 1, 1874, as above quoted, has no application here, upon the alleged ground that it impairs the obligation of the contract between the State and the Continental Insurance Company, as embodied in the charter of the latter company; and that, therefore, said section 3, as applied to the company, is unconstitutional. In other words, the doctrine is invoked that the legislature can not repeal, impair or alter the rights and privileges, conferred by the charter of a corporation, against the consent and without the default of the corporation judicially ascertained and declared. (*Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310).

It is not necessary here to discuss the question, whether the act of 1874 applies to special charters, like that of the Continental Insurance Company, where legislative control is not reserved in such charter. This is so, for the reason, as will hereafter be seen, that the special charter of the Continental Insurance Company did contain such reservation of legislative control.

In *Ward* v. *Farwell*, 97 Ill. 593, the constitutionality of the Insurance act of July 1, 1874, was under consideration by this court, and, in its main features, the act was there held to be constitutional. Subsequently, in *Chicago Life Ins. Co.* v. *Auditor*, 101 Ill. 82, we said (p. 87): "The point is made that the statute, under which this proceeding is had, is, as applying to this company, unconstitutional. This question of constitutionality is fully settled by the recent decision of this court in *Ward* v. *Farwell*, 97 Ill. 593, where it was decided that this act of 1874 was constitutional, and that it was so as applied to the Republic Life Insurance Company, incorporated under a special charter granted before the passage of the act of 1874, to-wit, March 22, 1869, in whose charter no specific reservation of legislative control was contained. By section 5 of an act amending the charter of the present company, approved February 21, 1867, it is provided as follows: 'This act, and the act to which this is an amendment, shall not be deemed to exempt said company from the operation of such general laws, as may be hereafter enacted by the General Assembly on the subject of life insurance.' Afterward, on March 29, 1867, said amendment to the charter, of which the foregoing was a part, was formally adopted by the company. This strengthens the application of the decision in *Ward* v. *Farwell* to the present case."

Under the decision in the case of *Ward* v. *Farwell*, *supra*, as interpreted by the subsequent case of *Chicago Life Ins. Co.* v. *Auditor*, *supra*, it might well be contended that the act of 1874 is constitutional, as applied to the

Continental Insurance Company, incorporated under a special charter granted before the passage of the act of 1874, even though no specific reservation of legislative control had been contained in that charter.   But it is not necessary here to so hold.

By the act of March 7, 1867, entitled "An act to amend the charter of the Fire and Tornado Insurance Company," the name of the latter company was changed to the "Continental Insurance Company," and section 3 of said act . of 1867 provided as follows:  "Nothing in this act, or in the act of which this is an amendment, shall be construed so as to  *  *  *  exempt said company from the operation of such general laws, as may hereafter be passed upon the subject of insurance companies."  By adopting the change of name, provided for in the act of 1867, the insurance company adopted the act, and made it a part of its original charter.   Indeed, this is not denied by counsel for defendant in error.   In the brief of defendant in error it is said:   "For the purposes of this argument it may be admitted that the amendatory act of March 7, 1867, was accepted by the company and its stockholders, and thereby constituted a valid reserve power in the legislature to subject the company to certain legislative control."   Even, therefore, if it were held, that the charter of this Continental Insurance Company was a contract which could not be altered or changed by any subsequent legislature without the consent of the company, yet it must be regarded as a fact that here the company has given such consent.   It consented by section 3 of the act of 1867, which was an amendment of its charter, that nothing in the act of 1867, or in the act of which the act of 1867 was an amendment, should be construed to exempt the company from the operation of such general laws, as might thereafter be passed upon the subject of insurance companies.   Consequently, the charter of this company stands on the same footing, as though full legislative control had been reserved in the original act.

All general laws on the subject of insurance companies are applicable to the Continental Insurance Company. It follows that the act of 1874—providing that the charters of all insurance companies, which have ceased for the period of one year to transact the business for which they were. organized, shall be deemed and held extinct in all respects as if they had expired by their own limitation—is fully applicable to the Continental Insurance ·Company. The latter company appears upon this record as having ceased for the period of one year to transact the business for which it was organized, and, therefore, under the act of 1874, which was a general law passed after the act of March 7, 1867, its charter must be deemed and held extinct in all respects as if it had expired by its own limitation.

It is said by counsel for defendant in error that the object of section 3 of the amendatory act of March 7, 1867, reserving to the legislature the power of control, was merely to subject the company to legislative control, so far as subsequent legislation might be passed, defining the duties and obligations of the company regarding its business, and the control of its corporate affairs. We think, however, that the language of section 3 is broad enough to indicate something more than legislative control over the mere business of the corporation. By the terms of section 3 of the act of 1867 the company is not to be exempt from the operation of such general laws as may thereafter be passed upon the subject of insurance companies. Surely, the provision in section 3 of the act of 1874 is a general law upon the subject of insurance companies. It provides that the charter of any company, which from neglect shall cease for the period of one year to transact the business, for which it was organized, shall be deemed and held extinct in all respects, as if it had expired by its own limitation, and, by accepting the act of March 7, 1867, the Continental Insurance Company consented to be subject to the pro-

visions of this general law. As upon the present record, as it stands, it is admitted to have ceased to transact business for the period of one year, it comes within the terms of section 3 of the act of 1874.

Defendant in error claims that, at the time when plaintiff in error refused a certificate of authority to the Continental Insurance Company, and licenses to its agents, on the ground that the charter of the company was extinct under the act of 1874, the State had waived any right to declare such a forfeiture, if it ever existed. In view of the allegations, contained in the answer, and of the admission of their truth by the filing of a demurrer, it cannot be said that the Continental Insurance Company was in the exercise of the privileges and in the performance of the functions, claimed to have been exercised and performed by it. Whether or not the non-user of corporate franchises for a fixed period creates a cause of forfeiture of the charter, so that no advantage can be taken of such non-user by any one except the State in a suit brought for that purpose, is a question, which does not arise here, because, by the terms of section 3 of the act of March 7, 1867, the Continental Insurance Company consented that its charter should become extinct, if it ceased for the period of one year to transact the business for which it was organized.

It is well settled that a writ of *mandamus* will not be issued, unless the petitioner shows a clear legal right to the writ; nor will such writ be issued, unless the party, applying for it, shall show a clear obligation on the part of the person, or body, sought to be coerced, to do the thing, whose performance is asked for by the issuance of the writ. (*People* v. *Sellars*, 179 Ill. 170; *People* v. *Town of Mount Morris*, 145 id. 427; *People* v. *Johnson*, 100 id. 537; *Springfield and Illinois Southeastern Railway Co.* v. *County Clerk*, 74 id. 27). Moreover, "the party who seeks to compel the performance of an act must set forth every material fact, necessary to show that it is the plain duty

of such party to act in the premises, before the courts will interfere." (*People* v. *Sellars, supra*). "In doubtful cases it (the writ of *mandamus*), should not be granted." (*Springfield and Illinois Southeastern Railway Co.* v. *County Clerk, supra*). Certainly, in view of what is said, it is at least doubtful whether or not the petitioner herein has a clear right to the writ, and whether or not the plaintiff in error is under a clear and undoubted obligation to do the thing prayed for in the petition.

For the reasons above stated, we are of the opinion that the court below erred in sustaining the demurrer to the amended answer as amended. Accordingly, the judgment of the court below is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*